IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2002 Session

**STATE OF TENNESSEE v. GREGORY KEY**

**Appeal from the Circuit Court for Rutherford County**
**No. F-50213     James K. Clayton, Jr., Judge**

---

**No. M2002-00154-CCA-R9-CD - Filed October 15, 2002**

---

Defendant, Gregory Key, was indicted by the Rutherford County Grand Jury on two counts of aggravated sexual battery. During a hearing on several pretrial motions, defense counsel, Darrell Scarlett, advised the trial court of a joint business venture between himself and Detective Lawson, an investigating officer in the case. The court entered an Order disqualifying Defendant's attorney from further representation, finding that the relationship constituted an appearance of impropriety. Pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, Defendant appeals the trial court's disqualification of his attorney and argues that he waived any conflict or appearance of impropriety after full disclosure.

**Tenn R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J. CURWOOD WITT and ALAN E. GLENN, JJ., joined.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the appellant, Gregory Key.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  BACKGROUND**

After the commencement of this case, Wayne Lawson, the detective who investigated the allegations against Defendant approached Defendant's attorney regarding the possibility of opening an indoor gun range. They formed a partnership to purchase land for the venture and were approved for a bank loan in the amount of $650,000 to construct the range. Defendant's attorney disclosed the business relationship to Defendant and advised him that he could retain different counsel. Defendant declined and testified at the hearing that he waived any conflict and that he desired his

attorney's continued representation. Defendant's attorney and Detective Lawson agreed not to allow their business relations to affect Defendant's case in any way, and defense counsel maintained that they have kept their discussions of this case to a minimum, discussing only general matters. The trial court, however, disqualified Defendant's attorney, finding that the representation created an appearance of impropriety in violation of Canon 9 of the Code of Professional Conduct.

## II. ANALYSIS

A.      Standard of Review

A trial court's ruling on the disqualification of counsel will be reversed only upon a showing of an abuse of discretion. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001). A trial court abuses its discretion whenever it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

Pursuant to its inherent authority, the supreme court of Tennessee governs the ethical conduct and discipline of Tennessee attorneys. The supreme court's special interest in ensuring that the ethical rules applicable to the legal profession are properly administered requires close scrutiny of the lower courts' interpretation and application of those rules. In *Clinard*, our supreme court asserted its authority, stating, "'to the extent this court has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited.'" 46 S.W.3d at 182 (quoting *Cheves v. Williams*, 993 P.2d 191, 205 (Utah 1999)).

B.      Applicable Ethical Rules

The issue presented in this appeal requires consideration of two distinct rules of ethics, Canons 5 and 9 of the Tennessee Code of Professional Responsibility. Disciplinary Rule 5-101(A) requires a lawyer to refuse employment when the lawyer's interests may impair his independent professional judgment. Tenn. Sup. Ct. R. 8. Also, Ethical Consideration 9-6 of Canon 9 requires that lawyers avoid even the appearance of impropriety. *Id.*

First, Disciplinary Rule 5-101(A) prohibits a lawyer's acceptance of employment where the lawyer's professional judgment may be compromised by the lawyer's own financial interests except where the client consents after full disclosure. *Id.* In the case at bar, the Defendant's attorney shares a financial interest with Detective Lawson, a principal witness in the prosecution's case against Defendant. At the hearing, defense counsel assured the court that his joint business venture would not affect his zealous representation of his client or compromise his duties and loyalty to his client. The state concedes in its brief that there has not been a violation of DR 5-101(A). Based on the record, this Court agrees. As defense counsel pointed out to the trial court, the outcome of the case is of no consequence to the success or failure of the business between the detective and defense counsel. The trial court expressed its confidence that defense counsel's professional judgment and ability to competently defend his client will not be impaired. Furthermore, Defendant testified at the

hearing that his attorney had informed him of the partnership between himself and Detective Lawson and Defendant waived any conflicts.

Nevertheless, even where no actual conflict exists, the trial court must consider any appearance of impropriety pursuant to Ethical Consideration 9-6 of Canon 9 of the Tennessee Code of Professional Responsibility. Tenn. Sup. Ct. R. 8. Because the avoidance of the appearance of impropriety is intended to preserve public confidence in our legal system, we must apply an objective standard, which is that of a reasonable layperson. *Clinard*, 46 S.W.3d at 187-188. Where an ordinary citizen with knowledge of the facts would perceive the representation as improper or "poses a substantial risk of disservice to either the public interest or the interest of one of the clients," an appearance of impropriety exists. *Id.* at 187.

The *Clinard* court recognized that the appearance of impropriety is an independent ground upon which disqualification may be based. *Id.* Application of the standard is not limited to situations like the one in *Clinard*, where a lawyer's firm "switched teams" and opposed the lawyer's former clients in the same litigation. *Id.* at 186 (observing that ethical rules must be broad and flexible and the appearance of impropriety may apply where more specific rules are ineffective). The supreme court characterized the disqualification of a party's attorney on that basis alone as a "drastic remedy," and warned that it be done only in those rare cases where "the taint of the appearance of impropriety can be purged only by disqualification." *Id.* at 187-88. We hold that this is such a case. Here, the appearance of impropriety is sufficient to warrant disqualification and the trial court did not abuse its discretion.

Detective Lawson signed the affidavit in support of the arrest warrant, and the indictment names Lawson as the prosecutor in the criminal case in which Defendant is charged with serious felony offenses. After charges were brought against Defendant in this case, Detective Lawson and Defendant's counsel entered into a substantial business relationship as partners, including a joint obligation on a $650,000 loan. Whether a jury should acquit Defendant or convict him as charged, or should the charges be dismissed by nolle prosequi or Defendant be allowed to plead to lesser included offenses and receive full probation, the circumstances in this case give rise to an appearance of impropriety. Whatever the outcome, a reasonable layperson, knowing all the facts, certainly might raise an eyebrow and question the effect the partnership had on the result. A legitimate lapse in memory by the detective in his testimony, or an otherwise valid trial tactic, that in hindsight, is determined to have been a mistake by counsel, would only fuel the public perception that the Defendant or the State received less than a fair trial. Accordingly, we conclude that from the perspective of a reasonable layperson, defense counsel's representation under these circumstances could create, to some degree, an appearance of impropriety.

C.     Waiver

Defendant was given the opportunity to waive any conflict or appearance of impropriety on the record. Defendant testified at the hearing that his attorney had explained to him the nature of the business relationship and Defendant waived any conflict or appearance of impropriety and expressed

his desire that his attorney continue to represent him. Trial courts, however, are afforded substantial latitude in refusing to accept waivers of conflicts. The Supreme Court, in *Wheat v. United States*, based this allowance to refuse waivers, at least in part, upon the federal courts' independent interest in ensuring compliance with ethical standards of conduct. *Wheat*, 486 U.S. 153, 162-63 (1988). Our own supreme court shares the concerns of the federal courts, and therefore follows the *Wheat* Court's rationale. *Burns v. State*, C.C.A. No. W2000-02871-CCA-R9-PD, 2001 WL 912817 (Tenn. Crim. App., Jackson, August 9, 2001).

### III. CONCLUSION

We should note that our state supreme court has recently adopted a new set of rules governing the conduct of attorneys. The new Rules of Professional Conduct will replace the existing Code of Professional Conduct, effective March 1, 2003. The Model Rules of Professional Conduct, promulgated by the American Bar Association, reject the appearance of impropriety standard. The *Clinard* court noted that future revisions to the rules of ethics may yield different results. 46 S.W.3d 186 at n.7. Despite this, however, the *Clinard* holding remains binding precedent and under current Tennessee law, this court must affirm the trial court's disqualification of Defendant's attorney based on an appearance of impropriety.

_____
THOMAS T. WOODALL, JUDGE